79 N.J. Super. 114 (1963)
190 A.2d 684
ROSEMARY WARRENDER, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
JOHN WALKER WARRENDER, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1963.
Decided May 9, 1963.
*116 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Leslie H. Cohen argued the cause for appellant-cross-respondent.
Mr. Samuel Levin argued the cause for respondent-cross-appellant.
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiff wife sued for separate maintenance, the voiding of a Mexican divorce decree secured by her against defendant with his cooperation and connivance, and custody of a four-year-old daughter of the parties. The trial court denied both maintenance and relief against the Mexican judgment on the ground of plaintiff's unclean hands in procuring a patently void divorce contrary to our laws and concepts of public policy. She was, however, awarded custody of the child and a counsel fee. Plaintiff and defendant each appeal those aspects of the judgment adverse to their respective positions.
The parties were married in 1953 in Newark and have always since been domiciliaries of this State. For the first four years of the marriage the defendant was in the military service, and the parties lived at the various posts where he was stationed. Thereafter they resided for a time with his parents in Irvington and later moved into a home of their own in South Plainfield.
*117 Early in 1959 the parties began to discuss divorce. The basis for their differences is somewhat obscure, but it is irrelevant to this appeal. There is no suggestion that either had a cause of action for divorce under our statutes. There is some indication that the plaintiff urged defendant to find a way by which they could be divorced. In September 1959 defendant, after inquiry on the subject, consulted a New York lawyer. A separation agreement was drawn and signed October 6, 1959, pursuant to which plaintiff was to receive $2,000 and defendant to have custody of the child (her position is that the latter arrangement was intended to be temporary until she could find employment). Another New York lawyer, called in by the first, made the arrangements for the Mexican divorce. The same day the agreement was signed in New York plaintiff took a plane to El Paso, which is just across the border from Juarez, in the State of Chihuahua, Mexico. Plaintiff taxied to Juarez the next day, and met the Mexican attorney. They went to a public building where she signed papers he presented to her. Two hours later she was back in El Paso, and shortly thereafter she flew back to New York. She had not spent one night in Mexico. All the expenses of the trip were defrayed out of the $2,000 paid to plaintiff by defendant.
The Mexican decree, dated October 9, 1959, recites that both parties submit to the jurisdiction of the court by their respective attorneys and that defendant admits the charge of incompatibility of temperaments of the parties, on which ground the divorce was granted. Nowhere does the decree declare the residence or domicile of either party to be in the Mexican state.
Plaintiff testified that just prior to taking the plane to Mexico she telephoned defendant asking for a reconciliation and that he said he was too tired to discuss it. He denied this. However, she testified that almost as soon as she returned from Mexico she sought a reconciliation and repeated these requests many times but that he always refused. At the trial she testified: "I have been wanting to go back for *118 two years. I do love him, and he just refuses to have anything to do with it." Defendant admitted this, but said the first request was made a month or two after her return. This action was instituted 15 months after the procurement of the Mexican judgment.
Neither party has remarried. Prior to the institution of the action defendant, living with his parents, had custody of the child, plaintiff exercising liberal visitation privileges. Since the judgment herein plaintiff has had general custody, but the child has spent the daytime hours, when plaintiff is employed, at defendant's home, in charge of his mother. Recently the child has been attending a day school mornings.
The principal issue on this appeal is whether on the law and the facts plaintiff is barred from aid of the court in requiring defendant to support her as his wife and requesting the court to declare the Mexican divorce void, by reason of her conduct in obtaining the divorce under the circumstances related.
There is no question but that the Mexican divorce is absolutely void on its face and that it has not legally terminated the marriage of the parties. Both parties were and are domiciliaries of New Jersey, and there is not the faintest pretense of adjudication by the decree of either residence or domicile of either of them in Mexico when rendered. Tonti v. Chadwick, 1 N.J. 531 (1949); State v. Najjar, 2 N.J. 208 (1949); State v. DeMeo, 20 N.J. 1, 14 (1955); Untermann v. Untermann, 19 N.J. 507, 516 (1955); Flammia v. Maller, 66 N.J. Super. 440, 451 (App. Div. 1961). For present purposes there is no basis for according greater recognition to a Mexican divorce on a one-day appearance than to the mail-order variety. In the Untermann case, supra, involving a "one-day residence in Juarez" (19 N.J., at p. 513), the Supreme Court held that by 1953 any doubt which anyone might have at one time entertained as to the invalidity in this State of a Mexican divorce was "completely dissipated" by the decisions in the Tonti and Najjar cases, supra.
*119 As we are here dealing with the judgment of a foreign country, not a sister state, the full faith and credit clause of the Federal Constitution is not applicable, but rather principles of comity. Such principles will not justify recognition of this divorce by our State because of its offensiveness to our public policy and statutes. Tonti v. Chadwick, supra; Fantony v. Fantony, 21 N.J. 525 (1956); N.J.S. 2A:34-22.
The foregoing state of the law having been beyond question when the charade of the Mexican divorce was arranged by New York counsel and performed by these parties, and plaintiff having repented over her part in it almost at once and sought in undoubted good faith to become reunited with her husband and child, is there any sound reason why she should be repelled when she takes legal recourse against a husband who seeks to be rid of his lawful wife and his obligation to support her, solely by resort to the plea that the court punish her for her part in their joint effort to flout our public policy and statutes?
Defendant argues that the trial court was correct in dismissing the action on grounds of unclean hands and estoppel. He cites cases which unquestionably hold that under given facts and circumstances the procurement, or the participation, assistance or acquiesence in the procurement, of a fraudulent or illegal divorce, may influence a determination that relief against the effect of such a divorce be withheld from a suitor or defendant under the rubric of either estoppel or unclean hands. See Untermann v. Untermann, supra; Untermann v. Untermann, 43 N.J. Super. 106 (App. Div. 1956), certification denied 23 N.J. 363 (1957); Judkins v. Judkins, 22 N.J. Super. 516 (Ch. Div. 1952); Flammia v. Maller, supra, 66 N.J. Super., at pp. 446-452; Hollingshead v. Hollingshead, 91 N.J. Eq. 261, 274 (Ch. 1920); Woodhouse v. Woodhouse, 11 N.J. 225, 229 (1953); Staedler v. Staedler, 6 N.J. 380, 394 (1951); cf. Schlemm v. Schlemm, 31 N.J. 557, 572 (1960); Tonti v. Chadwick, supra. For cogent criticisms of the application of the doctrine of unclean hands *120 to actions to establish or declare marital status, see 13 Rutgers L. Rev. 237, 238 (1958) and 12 Rutgers L. Rev. 174 (1957).
Although estoppel in pais (equitable estoppel) and unclean hands are distinct concepts, the terms estoppel and unclean hands have often been used interchangeably. The decisions which invoke estoppel in this area do not uniformly require a showing of all the elements of an equitable estoppel in pais, being sometimes influenced by the reprehensible aspects of the attacking party's behavior and position to accept less. E converso, the expression of emphasis in the cases on unclean hands is almost always found in the context of reliance by the other party or third parties (e.g., by remarriage) upon the divorce under attack, or where the welfare of children or property rights have become dependent upon the continued subsistence of the impugned divorce. See Clark, "Estoppel Against Jurisdictional Attack on Decrees of Divorce," 70 Yale L.J. 45 (1960) (taking a different view of the desirable policy in this area from the Rutgers Law Review notes cited above); Hollingshead v. Hollingshead, supra; Flammia v. Maller, supra; Woodhouse v. Woodhouse, supra, 11 N.J., at p. 229. In other words, no consistently applicable general rule geared separately to either the doctrine of estoppel in pais or that of unclean hands emerges from an analysis of all the cases. It is for this reason that the court was moved to say, in the second Untermann case, supra, 43 N.J. Super., at p. 109, that: "These doctrines of unclean hands and estoppel, so far as they affect this case, are somewhat akin." It might be a bit more accurate to substitute the words, "interrelated and interdependent," for "akin," in the concept expressed in the excerpt quoted.
In treating the concept of estoppel, as distinguished from unclean hands, in this field, the well-considered opinion of Vice-Chancellor Buchanan in the Hollingshead case, supra, questions whether estoppel may bar a challenge to an invalid divorce, but emphasizes that, in any event, an estoppel cannot operate where giving effect thereto would in effect dissolve the contract of marriage by will of the parties. This qualification, *121 salutary enough on its face, has of course since the writing of the Hollingshead opinion in 1920 become somewhat weakened by the subsequent decisions of the United States Supreme Court requiring the according of full faith and credit in practically conclusive measure to divorce decrees of sister states where both parties appear in the proceedings, even though overtones of collusion are present. See Schlemm v. Schlemm, supra. But no such dilution of our strong policy in favor of maintenance of the marriage relationship is called for when dealing with judgments of a foreign nation, particularly where the mockery of our public policy and statutes by such a judgment is as transparent as here. In the instant situation, therefore, along with the other influential considerations which will bear upon the court's attitude toward the party attacking a divorce he himself obtained, must be arrayed the policy in favor of sustaining the marriages of New Jersey domiciliaries, mentioned in Hollingshead, supra, and lately referred to in the dissenting opinion of Mr. Justice Francis in Schlemm v. Schlemm, supra, 31 N.J., at p. 585, as well as in the many other New Jersey cases, old and recent, cited therein.
It is now settled that in deciding whether estoppel or unclean hands will apply in a particular set of facts the court will appraise the "total situation" and will weigh the equities of the parties and others affected, as well as the interests of the State, with flexibility. Second Untermann case, supra, 43 N.J. Super., at pp. 109, 110. We cannot improve upon the recital of illustrative pertinent considerations outlined in Hollingshead, supra, 91 N.J. Eq., at p. 274:
"Among the facts and circumstances which are or may be material factors in such a controversy are whether the divorce decree is void or voidable; whether it was obtained by the present complainant, or was participated in by him; whether it was obtained with or without collusion or fraud upon the court, or fraud or duress upon the adverse party; whether the other spouse has since died, or married again; whether there are children by such second marriage; whether the complainant has `accepted the benefits' of the divorce, such as alimony, or by marrying again; whether or not the other spouse *122 participated in the divorce, or acquiesced; whether complainant has been guilty of laches or undue delay; what the nature of the new suit is, and the motive or object of complainant in bringing it; whether the complainant is an original party to the divorce action, or a child, or heir or representative, and the like."
Viewing the totality of the circumstances and relevant considerations demonstrated here, we are constrained to the view that the Chancery Division erred in denying relief to this plaintiff. True, her conduct was reprehensible, the ill-advised product of an emotional whim, but so was that of defendant in arranging and financing the whole Mexican affair. She repented almost at once and requested of defendant, and still wants, reconciliation and restoration of the marriage. While our decision here will not automatically recreate a viable marital relationship, it will at least not operate forever to preclude it, as an affirmance of the judgment would be likely to do, and will leave the doors open for the parties to come together again. Moreover, the parties may not be able to remarry on the strength of the Mexican decree in New Jersey and some other jurisdictions, or, if they do, the marriage may be deemed bigamous. State v. DeMeo, supra. Voiding the decree will forestall any temptation of either party to attempt to enter into a dubious new marriage and thus enmesh a possibly innocent third person. These results not only accord with our public policy, but with the best interests of the child of the parties. As the vice-chancellor said, speaking supposititiously in Hollingshead, supra, 91 N.J. Eq., at p. 266, to the very contingency here presented: "Certainly, if one of the guilty parties quickly repented and made application to repair the wrongdoing, there cannot well be imagined any good reason against permitting it to be done."
No third party has been affected by or relied upon this divorce. As against all the considerations discussed herein militating for setting aside the Mexican judgment, plaintiff's acceptance of the $2,000 settlement (less expenses of the trip to Mexico) should not swing the decision the other way. A *123 much more substantial property settlement was held not to warrant such a conclusion in relation to a similarly circumstanced wife in Hollingshead, supra.
Nor do we regard the lapse of the 15-month period prior to bringing this action as laches. Plaintiff may well have hoped to win defendant back voluntarily without having to bring this action.
For the reasons stated, we hold plaintiff was not equitably precluded from bringing this action to obtain support and have the Mexican divorce judgment adjudged void, and that unclean hands does not apply.
The trial court did not enter into the matter of the amount of support properly allowable, having dismissed the action in that regard. This issue will consequently have to be retried upon the remand of the cause.
On defendant's appeal of the award of custody to the wife, we have concluded there should also be a rehearing of this issue upon remand so that the present and immediately prospective circumstances affecting the welfare of the child may be given consideration. We are in general agreement with the basic determination of the trial court that custody of a female child of such tender years belongs with the mother rather than the father where they are not living together. However, we are concerned with the matter of direct physical supervision of such a child during hours when the mother is employed. This issue can best be disposed of by the trial court through a hearing going to the circumstances now existing and in contemplation, unless the parties can come to an agreement thereon subject to the approval of the trial court.
On defendant's appeal of the $1,000 counsel fee awarded plaintiff, we are not persuaded that there was any error.
Modified and remanded for further proceedings in the trial court consistent with this opinion.