120 N.J. Super. 260 (1972)
293 A.2d 706
GEORGE F. KUGLER, JR., ATTORNEY GENERAL OF NEW JERSEY, PLAINTIFF
v.
HAITIAN TOURS, INC., A NEW JERSEY CORPORATION; JOSEPH LONZELLO AND MARTIN MILLANO INDIVIDUALLY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 27, 1972.
*261 Mr. Douglas J. Harper, Deputy Attorney General, Attorney for Plaintiff.
Messrs. Nolan and Lynes (Mr. Edward S. Snyder, Attorneys for the New Jersey State Bar Association.
Messrs. Stern & Dubrow (Mr. Morris Stern), Attorneys for Defendants.
MEHLER, J.S.C.
In this action brought by the Attorney General pursuant to Section 8 of the Consumer Fraud Act, N.J.S.A. 56:8-8, and as an officer of the court, he seeks to enjoin defendants from engaging in what he contends are unlawful practices proscribed by Section 2 of the Act. He also asks for restoration of moneys to consumers and civil penalties as authorized by Sections 8 and 13.
The New Jersey State Bar Association has been permitted to intervene in the action and has filed a complaint which charges defendants with the unauthorized practice of law. It seeks to enjoin defendants from acts which it says constitute the practice of law.
On this continued return day of an order to show cause the Attorney General seeks final summary judgment, as is permissible in an appropriate case under Section 8 of the Act and Rules 4:67-1, 2 and 5, and failing that, seeks interlocutory restraints pending plenary disposition of his claim. For the purpose of the motion he relies on a transcript of testimony of the individual defendants and on the affidavit of John P. Legnaioli, an investigator of the Division of Consumer Affairs, the latter only to the extent of showing the papers that are made available by defendants to consumers. *262 For the purpose of this motion the Attorney General does not rely on any inferences which may be drawn from the conversation which Legnaioli had with defendant Millano as set out in the former's affidavit. Accordingly, the material facts are not in dispute.
Defendant Haitian Tours, Inc. is a New Jersey corporation whose business is operated by the individual defendants from an office in East Orange. Since on or about December 1, 1971, defendants have been selling a Haitian travel package, which consists of three elements, namely, transportation to and from Haiti, lodging and meals for one or two days at a hotel there, and preparations for the securing of a Haitian divorce. The arrangements include reference to a Haitian guide and lawyer.
The contemplated divorce is one obtained in either a one party or a two party proceeding. A two party proceeding is one in which one spouse, who becomes the petitioner, goes to Haiti and submits to a Haitian court the consenting spouse's waiver, submission to jurisdiction, and power of attorney which has been notarized, a letter of information and affidavit of marriage. The form of power of attorney uniformly provides for the appointment of Marc L. Raymond as attorney for the consenting spouse "with all necessary power to accomplish the special purpose" of the power.
A one party divorce occurs when the other spouse will not consent to the proceedings. The procedure is the same as in a two party case, except that a power of attorney is not obtained and service of process is presumably effected extraterritorially.
In short, the two party divorce is what is commonly known to us as a bilateral divorce and a one party divorce is commonly known to us as a unilateral divorce.
The cost of a package for a unilateral divorce is $1125 and for a bilateral divorce is $1275. In each instance the consumer or applicant pays $425 to Haitian Tours; the balance is paid to its representative in cash upon arrival in Haiti and before the court appearance. The fees paid are *263 allocated as follows: air fare $198, lodging $84, consultations and document reproduction fee $25, referral fee $200, legal and administrative fees for services rendered in Haiti $538 in case of a bilateral divorce, and $768 in case of a unilateral divorce. The referral fee is paid to Haitian Tours in those cases where it refers the applicant directly to its Haitian representative and is said to be paid by a Haitian organization.
When one whose interest in obtaining a Haitian divorce consults defendants he pays a $25 fee for a consultation and printed material. He is advised to take the material home, consult with his attorney, and to return if he wishes to use defendant's services. The material consists of various papers, copies of which are attached to an affidavit made by Investigator Legnaioli. In general, they consist of the following: a letter of information on which the applicant is to furnish requested information about the spouses, the date of marriage, names and custody of minor children, and whether there is a separation agreement, and instructions as to what documents must be brought to court; a form of certification to be executed by the applicant attesting to the fact and place of marriage, a power of attorney to be executed by the defendant spouse appointing Mr. Raymond to accept service and appear for him; a form of the proposed judgment of divorce; purported excerpts of the Haitian Divorce Law; a copy of an article published in the New York Law Journal entitled "Haitian, Dominican Laws of Divorce Evaluated", by a New York lawyer, in which he analyzes the Haitian divorce law and expresses an opinion that a Haitian divorce decree is entitled to recognition by the New York courts to the same extent "as the New York courts extended to divorce decrees of [Mexico]"; a paper entitled "General Information on Haitian Divorces" which describes one and two party divorces, states that "both of these situations can be resolved in the courts of Haiti, providing that certain definite procedures are followed" and further says that where one spouse won't co-operate "service of process may be had on *264 such a spouse as provided in" the Haitian divorce law. The statement proceeds as follows: "While our Haitian attorney does not recommend this type of Divorce, as he believes it to be a voidable decree, many individuals do avail themselves of this as a last resort, and with the hope that the Defendant will not bring an action at a later date to have the Decree set aside." The papers bear the legend "Consult your attorney."
Defendants make the necessary arrangements for an applicant when he returns prepared to buy the package and pays for it. Until restrained by this court, defendants sold about 60 packages, some 15 to 20 of them to New Jersey residents.
N.J.S.A. 56:8-2 provides, in relevant part, as follows:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; * * *.
By definition, the term "merchandise" includes any services or anything offered, directly or indirectly to the public. N.J.S.A. 56:8-1(c).
Section 8 authorizes the Attorney General to seek and obtain in a summary action an injunction prohibiting one engaged in an unlawful practice from continuing such practice.
The Attorney General contends that the practice of defendants of offering and selling the Haitian divorce package is an unlawful practice as defined by Section 2, in that the divorces contemplated and sold in the package are null and void and are not as a matter of law entitled to recognition in the courts of this State. He also argues that because the decrees are invalid the practice directly fosters the procurement *265 of divorces which as a matter of common law are frauds upon the courts of this State and undermine the integrity of the courts and the State's vital interest in the marital relationships of its domiciliaries.
Recognition of a divorce decree of a foreign country rests on the doctrine of comity controlled by the public policy of the State whose recognition is invoked. The full faith and credit clause of the Constitution has no application. Tonti v. Chadwick, 1 N.J. 531 (1949). "Comity, in a legal sense, is neither a matter of absolute obligation on the one hand nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws." Fantony v. Fantony, 21 N.J. 525, 533 (1956). "The recognition of a judgment of a foreign court under the principle of comity is subject generally to two conditions: (1) that the foreign court had jurisdiction of the subject matter; (2) that the foreign judgment will not offend the public policy of our own State." Id. at p. 533.
Haitian law does not require domicile of either of the parties to the divorce. Only a fleeting transitory presence of one of them is all that is required. This is confirmed by the fact that the package provides accommodations at a Haitian hotel for one day, although there is evidence to show that defendants will pay for a two day stay.
In Warrender v. Warrender, 79 N.J. Super. 114, 118 (App. Div. 1963), the court declared that a bilateral Mexican divorce was "absolutely void on its face" and did not legally terminate the marriage. It held, at p. 118, that there was "no basis for according greater recognition to a Mexican divorce on a one-day appearance than to the mail-order variety." The court characterized the proceeding in that case as "the charade of the Mexican divorce." Id. at 119.
*266 Defendants argue that by reason of our revised divorce laws there is a likelihood that the Haitian divorce will be recognized here. I do not agree with this surmise. They further say that this court should refrain from declaring that a Haitian divorce will not be recognized here but should wait until such a divorce is directly before the court. I see no reason to wait that long. The signposts are clear.
While I have been unable to find a reported case in New Jersey, or elsewhere for that matter, dealing with a Haitian divorce, I am satisfied that the kind of bilateral divorce contemplated by defendants will be accorded no greater validity in this State than was the Mexican divorce in Warrender. A fortiori is this so in the case of a unilateral divorce. See Untermann v. Untermann, 19 N.J. 507 (1955). The interest of the State is too great to warrant recognition of Haitian "quickie" divorces.
Each State has a legitimate concern in the marital status of persons domiciled within its borders. As the court said in Williams v. North Carolina, 317 U.S. 287, 298, 63 S.Ct. 207, 213, 87 L.Ed. 279, 286 (1942):
The marriage relation creates problems of large social importance. Protection of offspring, property interests, and the enforcement of marital responsibilities are but a few of commanding problems in the field of domestic relations with which the state must deal.
And in a second case involving the same parties, Williams v. North Carolina, 325 U.S. 226, 230, 65 S.Ct. 1092, 1095, 89 L.Ed. 1577, 1581 (1945), the court said:
Divorce, like marriage, is of concern not merely to the immediate parties. It affects personal rights of the deepest significance. It also touches basic interests of society.
See also Staedler v. Staedler, 6 N.J. 380, 390 (1951), where the court said that a marital relationship cannot be reduced to the status of ordinary commercial transactions.
As was said in Warrender, supra, 79 N.J. Super. at p. 122, the parties may not be able to remarry on the strength *267 of such decrees, in New Jersey and in some other jurisdictions, or if they do, the marriage may be deemed bigamous. Such decrees may possibly enmesh innocent third persons. The best interests of children of the parties may be adversely affected and property rights and interests may also become involved.
It is obvious that consumers or applicants who purchase the package and journey to Haiti for a divorce do so with the expectation that the divorce will be recognized in this country. It is true that defendants refrain from expressing any view of the validity of Haitian divorces in New Jersey, do not say that they are valid, and as a matter of policy recommend that customers who want an opinion as to validity seek the advice of their own counsel. It is also true that the papers bear the legend: "Consult your attorney." In my opinion this does not alter the fact that applicants who purchase the package and repair to Haiti for divorces fully expect them to be recognized in the United States, nor by the fact that in the paper entitled "General Information on Haitian Divorces" is the statement, quoted above, that "our Haitian attorney does not recommend a one-party divorce, as he believes it to be a voidable decree." It is not to be expected that a layman will readily understand what is meant by the term voidable decree. Moreover, this statement implies that two party decrees have no impediments.
In my opinion the sale of the package, the obvious purpose of which is the procuring of a Haitian divorce, is a fraud upon the purchasers, for the divorces they obtain are, for all practical purposes, worthless and do not accomplish the purpose for which they are purchased.
Defendants say that they deal not only with residents of New Jersey, but residents of other States, including New York, in which a bilateral Mexican divorce has been held valid. In Rosenstiel v. Rosenstiel, 16 N.Y.S.2d 64, 262 N.Y.S.2d 86, 209 N.E.2d 709 (1965), cert. den. Wood v. Wood, 383 U.S. 943, 86 S.Ct. 1197, 16 L.Ed.2d 206; cert. den. 384 U.S. 971, 86 S.Ct. 1861, 16 L. Ed 2d 682 (1966), *268 the New York Court of Appeals held that a bilateral Mexican divorce was entitled to recognition in New York. It is my understanding that a unilateral divorce is not entitled to such recognition in New York. I do not pretend to predict whether the New York courts will continue to follow Rosenstiel, now that the New York divorce laws have been liberalized, and I must assume, for the purpose of this case, that they will. The principle of that case has, with perhaps a few exceptions, not been followed by the courts of our sister states.
It has been stated in Annot. 13 A.L.R.3d 1419 that:
Except in New York, foreign "bilateral" divorce decrees, rendered upon the physical presence of the petitioning spouse in the divorcing nation and the voluntary appearance of the defendant spouse in the proceedings through an attorney, are not usually accorded domestic recognition.
Consumers other than residents of New Jersey seek and obtain the services of defendants. Even though some may come from New York, others come from New Jersey and perhaps from other states, where it is likely that such decrees are not accorded recognition. Even New York domiciliaries may marry here and subject themselves, innocent third persons and children to the consequences of a divorce which will not be recognized here.
I find no validity to defendants' argument that their activities are constitutionally protected, that is, that to grant the relief here would deprive them of substantial rights under the 1st, 4th, 9th and 14th amendments of the United States Constitution. Nor do I agree with their contention that this court is not free to restrict, let alone stem, the defendants' business because they are engaged in interstate and international commerce. It is well settled that for constitutional purposes certain activities of a business may be intrastate and therefore subject to state control while other activities of the same business may be interstate and therefore subject to federal regulation. It was said in United States *269 v. South-Eastern Underwriters Association, 322 U.S. 533, 548, 64 S.Ct. 1162, 1171, 88 L.Ed. 1440, 1454 (1944):
In marking out these activities the primary test applied by the Court is not the mechanical one of whether the particular activity affected by the state regulation is part of interstate commerce, but rather whether, in each case, the competing demands of the state and national interests involved can be accommodated.
The same rule applies to instances of foreign commerce. See Epstein v. Lordi, 261 F. Supp. 921 (D.C.N.J. 1966) aff'd 389 U.S. 29, 88 S.Ct. 106, 19 L.Ed.2d 29 (1967). Nor do I agree that this case is distinguishable from Kugler v. Romain, 58 N.J. 522 (1971) because the consumers here are affluent enough to pay the fees for the package.
I conclude that defendants have been guilty of unlawful practices proscribed by the Consumer Fraud Act. That Act is not confined by its terms or spirit to activities involving residents of this State. As I read the Act, it prohibits unlawful practices in New Jersey without limitation as to the place of residence of the persons imposed upon.
Under all of the circumstances, I feel constrained to enjoin defendants permanently from all sales of the Haitian divorce package in New Jersey. Final judgment will be entered against defendants.
In view of my decision, I find no need to pass on the application of the State Bar Association for injunctive relief. However, it seems to me that defendants' activities fall within the scope of the cases cited by the Association on the question of the unlawful practice of the law.