OPINION OF THE COURT
Margaret Taylor, J.
In May of 1978, the St. George, Staten Island branch of Citibank conducted a “Fire Sale Promotion” offering free checking to new customers opening a Citibank checking and savings account along with a checking plus line of credit. The only advertisement of this promotional campaign was in-branch window and counter signs, which signs attracted the attention and the account of Ms. Joan Giummo, the plaintiff herein. In August, 1979, when the bank’s branch management decided to terminate the free checking privileges of selected depositors, Ms. Giummo’s monthly statement reflected the change with a $3 service charge. Although defendant alleges that a notice of the proposed change of terms is routinely sent to the affected banking customers, the plaintiff denies having received said notice and defendant could not produce any evidence of same, contending that this notice was lost in the labyrinth of the corporate computers.
In this small claims action, plaintiff alleges that the bank’s withdrawal of her free checking privileges was wrongful in that the bank had not given any notice in its offer of May, 1978 that it reserved the right to unilaterally change the bank’s account’s terms upon reassessment of its commercial interests.
*896 The bank contends in its own defense that no contract, oral or written, was ever made by Citibank to grant free checking privileges indefinitely, and that even if it did orally imply such a promise, the Statute of Frauds would bar enforcement of this unmemorialized contract after May of 1979, one year after the account was opened. (General Obligations Law, § 5-701.) Defendant moves for dismissal of plaintiff’s complaint and for summary judgment to defendant (CPLR 3211), or, in the alternative, for summary judgment in plaintiff’s favor limiting her recovery to the $9 in service charges that she actually incurred.
The court is inclined to agree that plaintiff’s recovery should be limited to the $9 of her actual damages. Nevertheless, the legal issues raised by this $9 claim are unsettled and troubling in the State of New York.
Under the common law, plaintiff’s cause of action sounds in contracts, which in fact she pleaded in her one-line complaint. Ms. Giummo’s claim is that the bank’s promotional banner fraudulently misrepresented the nature of their offer by not disclosing its reserved right to terminate the free checking privileges at its own unfettered discretion. (See Restatement, Contracts [1932 ed], §§ 470, 471, 472; Restatement, Restitution [1937 ed], § 8.) Plaintiff credibly testified that had the bank revealed its intention to change at will the time factor of the agreement, she would not have moved her account to Citibank. That the deceptive advertisement was a material factor inducing the plaintiff’s reliance and subsequent contractual relations with defendant has been established to the satisfaction of the court in a hearing on the motion. (See Restatement, Contracts [1932 ed], § 479; Restatement, Restitution [1937 ed], § 8, subd [2]; comment e.) Whether or not a sophisticated commercial entity would rely on the defendant’s silence is not the litmus test here, for it is clear that the reasonably sophisticated consumer, which plaintiff is and to whom the promotional banners were directed, was not unreasonable in being misled. The common law afforded a plaintiff so aggrieved with the remedies of restitution (see Restatement, Restitution [1937 ed], § 9, subd [1]), or of voiding the contract so induced. (See Restatement, Contracts [1932 ed], § 476, subd [1].)
*897 Misrepresentations by omission or by commission that induce business transactions and are relied upon to one party’s detriment may further give rise to an action sounding in tort under the common law. (See Prosser, Law of Torts [4th ed], §§ 105-110; Restatement, Torts 2d, § § 525, 538 [Tent Draft No. 10, 1964]; Hester, Deceptive Sales Practices and Form Contracts — Does the Consumer Have a Private Remedy?, 1968 Duke U 831, p 860.) In this context it is hardly bold jurisprudence to award plaintiff $9 in damages to make her whole for the economic injury she actually sustained.
This type of nondisclosure by national banks such as defendant is emphatically proscribed by Federal regulations. (See, generally, Regulation Q, 12 CFR Part 217.) Thus time or amount requirements for interest rates on deposits as well as penalties for early withdrawals must be “clearly and conspicuously stated” in all advertisements (12 CFR 217.6 [d], [e]) and must be “expressly called to the attention of the customer.” (12 CFR 217.4 [e].) In these contexts Federal regulation is clear: “No member bank shall make any advertisement, announcement, or solicitation *** that is inaccurate or misleading or that misrepresents its deposit contracts.” (12 CFR 217.6 [g].)
The policy of the State also, as codified by the Legislature, is to protect the vulnerable position of the consumer against precisely the type of deceptive business practice that is the subject of this lawsuit. (General Business Law, § 349, subd [a]; § 350; see, also, Penal Law, § 190.20; Executive Law, § 63, subd 12; Administrative Code of City of New York, § 2203d-1.0 et seq.; US Code, tit 15, § 45 [Federal Trade Commission Act, § 5].) The extent to which an advertisement fails, as the instant one did, to reveal material facts is fully a factor in ascertaining whether an advertisement is misleading under the General Business Law. (New York State Bar Assn, Antitrust Law Symposium, 1967, p 86.)
Unhappily, although the policy of the State is unambiguous in protection of plaintiff, no concommitant statutory remedy was provided until recently. At the time that this action was initiated, New York distinguished itself along *898 with Alabama, Arkansas, Delaware, Iowa, New Mexico, North Dakota and Oklahoma as the only States in the Union that did not allow a private right of action under its consumer fraud laws. Remedial legislation was approved by Governor Carey on June 19, 1980. In addition to authorizing private consumer actions, the new statute also provides for a minimum damage recovery and for treble damages and attorney’s fees to the prevailing plaintiff in appropriate cases. (General Business Law, § 349, subd [h], L 1980, ch 346.)
In light of the unavailability to this plaintiff of any retroactive benefit from this statute, plaintiff’s common-law claim would have come closer to affording her a make-whole remedy had it been brought as a consumer class action. (CPLR 901, ei seq.) The liberalized requirements of CPLR 901 (subd a) were codified precisely with this type of claim in mind, so as to facilitate collective recovery for individuals whose claims are too small to justify the efforts and costs of litigation. (Friar v Vanguard Holding Corp., 78 AD2d 83; Gilman v Merrill Lynch, Pierce, Fenner & Smith, 93 Misc 2d 941; see Eisen v Carlisle & Jacquelin, 417 US 156, 185-186 [Douglas, J., dissenting on another issue].) Violations of consumer rights are especially appropriate for class actions. (King v Club Med, 76 AD2d 123; Gaudagno v Diamond Tours & Travel, 89 Misc 2d 697; 1975 McKinney’s Session Laws of NY, p 1493; Eighteenth Ann Report of NY Judicial Conference, 1973, pp A35-A36.)
Class action procedures, like the new private action remedy, greatly encourage the private enforcement of consumer laws. Further, “the prophylactic effect of the threat of class action exposure * * * elevates * * * a lawsuit [such as the one at bar] from the ineffective nuisance category to the type of suit which has enough sting in it to insure that management will strive with diligence to achieve compliance.” (Senator Hart in the debates on class actions and the Truth-in-Lending Act, Cong Rec, July 23, 1973, p 25419.)
Nevertheless, the unavailability of a statutory private right of action cannot be read as an eradication of consumer’s common-law remedies that predated the relevant *899 legislation. Neither can the absence of the other members of the class of customers similarly injured by defendant’s promotional campaign bar recovery to this plaintiff.
The court’s decision in this case must be informed by the policies of our Federal Government and of this State to add to the code of the marketplace the responsibility of caveat venditor (New York State Bar Assn, Antitrust Law Symposium, 1967, p 82), and to change the rule of commerce to “Let the seller make full disclosure” (New York State Bar Assn, Antitrust Law Symposium, 1968, p 92). The award of judgment to plaintiff on her common-law claim of $9 effectuates that public policy. Summary judgment for plaintiff is granted for $9 plus interest from November 1, 1979, costs and disbursements.