In re Gary W. HEMINGWAY, Debtor.

**PEOPLE OF the STATE OF NEW YORK, Appellant,**

v.

**Gary W. HEMINGWAY, Appellee.**

**No. 83–CV–574.**

United States District Court,
N.D. New York.

Sept. 12, 1983.

Robert Abrams, Atty. Gen., State of N.Y., Albany, N.Y., for appellant; Michael J. Hungerford, Asst. Atty. Gen., Syracuse, N.Y., of counsel.

Frank H. Armani, Syracuse, N.Y., for appellee; James M. Sullivan, Jr., Syracuse, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

This is an appeal from a decision of the Bankruptcy Court, Leon J. Marketos, Bankruptcy Judge, dismissing with prejudice the appellant's complaint to determine the dischargeability of certain debts incurred by appellee Gary W. Hemingway. Judge Marketos held that the State of New York lacked standing to sue and refused to allow the substitution of parties whom it was alleged did not have such standing. The Attorney General, representing the State, argues that these rulings constituted reversible error and has brought the instant appeal.

## FACTS

Appellee Hemingway was a general contractor who received certain sums of money from individuals who contracted with him to perform construction services. As a result of various complaints about the way Hemingway was conducting his business, the Attorney General instituted consumer fraud proceedings against him in the New York State Courts. In 1978, Hemingway defaulted in these proceedings which alleged that he had made numerous false representations to consumers in the course of his business.

As part of the relief obtained in the state court proceeding, Hemingway was enjoined from violating New York State consumer protection laws, and was ordered to pay restitution to the State of New York on behalf of six named consumers injured by his fraudulent conduct. The Attorney General, as plaintiff in the action, was granted a $2,000.00 additional allowance pursuant to Section 8303 of the New York Civil Practice Law and Rules. N.Y.Civ. Prac.Law § 8303 (McKinney 1981 & Supp. 1982–83) (hereinafter CPLR). Upon further default, contempt proceedings were commenced against Hemingway and some payments of restitution were made to the Attorney General pursuant to the court order.

On August 9, 1982, Hemingway filed his petition in bankruptcy, and the Attorney General filed his complaint on September 30, 1982. According to the complaint filed in the Bankruptcy Court below, the Attorney General alleges that the monies ordered to be paid to him for distribution to the named consumers are a debt incurred through false pretenses in contravention of 11 U.S.C. § 523(a)(2)(A) (Supp. V 1981). Moreover, the Attorney General further al-

leges that the $2,000.00 additional allowance is a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss...." 11 U.S.C. § 523(a)(7). If this were the case, then the debt would be nondischargeable under the Code.

## ADDITIONAL ALLOWANCE

The purpose of an additional award of costs under the CPLR is "to indemnify a successful party for expenses beyond those usually incurred...." *Metropolitan Sav. Bank v. Tuttle*, 183 Misc. 879, 880, 52 N.Y.S.2d 472, 473 (Sup.Ct., Bronx Co.1944) (citing *Town of Brighton v. Rochester Vulcanite Pavement Co.*, 149 Misc. 592, 268 N.Y.S. 795). *See also* CPLR § 8303 practice commentary C8303:1 at 223. The payment is made to the party bearing the burden of prosecuting a particularly difficult case.

■ In the instant case, the Attorney General was the plaintiff in the consumer fraud proceedings and the additional allowance was granted to him rather than to any particular consumer fraud victim. *See State of New York by Lefkowitz v. Daro Chartours, Inc.*, 72 A.D.2d 872, 422 N.Y.S.2d 146 (3d Dep't 1979). Thus, this Court disagrees with the ruling of the Bankruptcy Court below that the additional allowance was to be paid to the State for distribution to the listed creditors. *See* Memorandum-Decision and Order at 2. The question still remains, however, as to the dischargeability of this debt.

Under 11 U.S.C. § 523(a)(7), debts incurred as a result of a "fine, penalty or forfeiture payable to and for the benefit of a governmental unit" are nondischargeable in bankruptcy. Here, as noted above, the $2,000.00 additional allowance *is* payable to and for the benefit of a governmental unit. Therefore, the issue that arises is whether this amount is a "fine, penalty or forfeiture" within the meaning of the statute.

■ In this Court's view, the $2,000.00 additional allowance is not a "fine, penalty or forfeiture." Rather, it is simply a recog-

nition by the state court that the prosecution was an unusual one and that some additional compensation was required to make the prosecuting party whole again. A review of the case law interpreting 11 U.S.C. § 523(a)(7) supports this Court's opinion that the additional allowance *is* a dischargeable debt under the Bankruptcy Code. The cases decided under this section all deal with criminal or tax related penalties and not anything analogous to the award of costs in a civil proceeding. *See, e.g., In re Osborn*, 4 B.R. 431 (W.D. Mo.1979) (declaring debt for withholding and social security taxes nondischargeable); *In re Daugherty*, 25 B.R. 158 (Bkrtcy.E.D.Tenn.1982) (declaring civil penalty for violation of mine safety laws nondischargeable); *In re Newton*, 15 B.R. 708 (Bkrtcy.N.D.Ga.1981) (declaring criminal restitution penalty nondischargeable); *In re Tauscher*, 7 B.R. 918 (Bkrtcy.E.D.Wis. 1981) (declaring civil fines for violation of child labor laws nondischargeable); *In re Young*, 10 B.R. 17 (Bkrtcy.S.D.Cal.1980) (declaring traffic fines nondischargeable). Accordingly, the Bankruptcy Court's dismissal of this part of appellant's complaint is hereby affirmed.

## STANDING

The Attorney General of the State of New York filed the instant complaint in the Bankruptcy Court as part of his continuing effort to protect the citizens of the State from consumer fraud. Earlier, the Attorney General had pursued state court remedies against appellee for violation of the State's consumer protection laws. Nevertheless, the Bankruptcy Court dismissed appellant's complaint because the order of restitution from the state court was for the benefit of the named consumers. Thus, according to the court below, the Attorney General was not a "creditor to whom such debt is owed" pursuant to 11 U.S.C. § 523(c), and, therefore, the Attorney General lacked standing to bring the action. *See* Memorandum-Decision and Order at 3 (citing *In re Pierson*, 17 B.R. 822, 823 (Bkrtcy.D.Minn.1982); *In re Meredith*, 4 Bankr.Ct.Dec. 652 (Bankr.S.D.Ohio 1978)).

■ While the Bankruptcy Court's interpretation of section 523(c) was correct, this Court finds that the court below was too rigid in its construction of the law and the general policy behind the Bankruptcy Code. In addition, this Court believes that the Attorney General has standing to maintain this action under the doctrine of *parens patriae* as a representative of the six named consumers. Therefore, the Bankruptcy Court's grant of summary judgment on this aspect of appellant's complaint is hereby reversed and this matter is remanded to the Bankruptcy Court for proceedings consistent with this opinion.

In *Alfred L. Snapp & Sons, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), the Supreme Court summarized the decisional law with respect to the doctrine of *parens patriae* and made several observations. To begin with, a state will have standing to sue under the doctrine when it can "articulate an interest apart from the interests of particular private parties, i.e., the state must be more than a nominal party." *Id.* at 607, 102 S.Ct. at 3269. One such interest that can be articulated, and it is of particular importance to the case at bar, is the "quasi-sovereign interest." In its broadest form, the Court noted that states have quasi-sovereign interests in protecting the "health and well-being—both physical and economic—of its residents in general." *Id.*

The *Snapp* Court refused to set any rigid guidelines on what types of interests would qualify as quasi-sovereign or what proportion of a state's population would have to be affected before the doctrine of *parens patriae* would come into play. Rather, the Court held that such determinations would have to be made on a case-by-case basis. The Court did, however, note the following.

> One helpful indicia in determining whether an alleged injury to the health and welfare of its citizens suffices to give the state standing to sue as *parens patriae* is whether the injury is one that the state, if it could, would likely attempt to address through its sovereign law-making powers.

*Id.* (footnote omitted). In the present case, the injury which the State of New York seeks to redress is one that has already been the subject of legislative attention, to wit, New York's consumer protection laws. Moreover, one would be hard-pressed to argue that protection against consumer fraud is *not* a subject of vital importance to the economic well-being of the citizens of New York State. *See generally People by Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 38–40 (2d Cir.1982) (granting standing under *parens patriae* doctrine to allow State of New York to pursue community housing for mentally retarded).

The second consideration for determining whether *parens patriae* standing is appropriate is that of "numerosity." In other words, whether the state "has alleged injury to a sufficiently substantial segment of its population." *Alfred L. Snapp & Son*, 458 U.S. at 603, 102 S.Ct. at 3267. While the State of New York seeks standing to represent six named consumers in the present case, it must not be overlooked that such representation is part of a much broader scheme of consumer protection. When viewed as a whole, and fully considering the future impact that an adverse decision to the State would have, the Court finds that *parens patriae* standing is appropriate in the instant case. *See People by Abrams v. 11 Cornwell Co.*, 695 F.2d at 39–40.

The Second Circuit in *11 Cornwell Co.* observed that "[p]arens patriae standing also requires a finding that individuals could not obtain complete relief through a private suit." 695 F.2d at 40. Here, the Court notes that private individuals could not, as a matter of law, have pressed the consumer fraud claims in the state courts. Such a function was entrusted by the Legislature solely to the Attorney General. Moreover, the order of restitution by the state court specifically ordered appellant to pay the Attorney General *for distribution* to the named consumers. Thus, in one sense, the individual consumers would

themselves lack formal standing under 11 U.S.C. § 523(c) to argue against the dischargeability of the restitution order.

Under the special facts of this case, the Court finds that the Attorney General has *parens patriae* standing to challenge the dischargeability of appellant's debt. Such a finding in no way implies that appellant will prevail on such a claim. Rather, appellant will now have the opportunity to attempt to prove that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The actual determination of dischargeability will be up to the Bankruptcy Court following whatever hearings it deems necessary. Therefore, it is hereby

ORDERED that the decision of the Bankruptcy Court entered April 7, 1983 is reversed and remanded for proceedings consistent with this opinion.