**In re John DeFELICE, Debtor.**

**STATE OF NEW YORK by Robert ABRAMS, Attorney General of the State of New York, Plaintiff,**

v.

**John DeFELICE, Defendant.**

**Case No. 5–86–00648.
Adv. No. 5–86–0197.**

United States Bankruptcy Court,
D. Connecticut.

Sept. 8, 1987.

---

Victor Olds and Barbara A. Flatts, Asst. Attys. Gen., New York City, for plaintiff.

James Berman, Zeisler & Zeisler, P.C., Bridgeport, Conn., for defendant.

**MEMORANDUM OF DECISION ON MOTION TO STRIKE**

ALAN H.W. SHIFF, Bankruptcy Judge.

**I**

**BACKGROUND**

On November 9, 1984, the Attorney General of the State of New York ("Attorney General") commenced a complaint against John DeFelice in the Supreme Court of the State of New York, County of St. Lawrence, seeking injunctive relief, restitution, damages and costs under New York Executive Law § 63(12). In that action the Attorney General alleged that DeFelice made numerous misrepresentations regarding the sale and/or subdivision of certain New York real estate. A temporary restraining order was granted, followed by a preliminary injunction, enjoining DeFelice from carrying on or transacting business as a real estate subdivider, broker or salesman in New York and from making the false and fraudulent representations set forth in the complaint. On September 26, 1986, while a motion for contempt for violation of the preliminary injunction was pending, De-Felice filed a chapter 7 petition in this court. The Attorney General thereupon filed this adversary proceeding, alleging, in the third cause of action of his amended complaint, that certain claims of consumer creditors listed in DeFelice's Schedule A–3 are nondischargeable under Code section

523(a)(2)(A).[1] In response, DeFelice filed a motion to strike the third cause of action, asserting that the Attorney General lacks standing to challenge the dischargeability of debts on behalf of the listed creditors.

**II**

**DISCUSSION**

**1**

**Motion to Strike to be Treated as a Motion to Dismiss**

■ A motion under Bankr.R. 7012(f), Rule 12(f) Fed.R.Civ.P. is not the proper procedure for seeking dismissal of a portion of a complaint. *Salazar v. Furr's, Inc.*, 629 F.Supp. 1403, 1411 (D.N.M.1986); 5 Wright and Miller, *Federal Practice and Procedure*, § 1380 (1969). In view of the fact that the motion attacks the Attorney General's standing to maintain this suit, it will be treated by this court *sua sponte* as a motion to dismiss for failure to state a claim upon which relief may be granted under Bankr.R. 7012(b)(6), Rule 12(b)(6) Fed.R.Civ.P. *See Spell v. McDaniel*, 591 F.Supp. 1090, 1113 (E.D.N.C.1984); *Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Doppelt (In re Doppelt)*, 57 B.R. 124, 127 (Bankr.N.D.Ill.1986). The parties have agreed to this treatment.

A motion to dismiss under Rule 12(b)(6) F.R.Civ.P. will not be granted

> "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, in passing on a motion to dismiss, the allegations of the complaint must be construed in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Fine v. City of New York*, 529 F.2d 70, 75 (2d Cir.1975).

---

1. Code § 523(a)(2)(A) provides that
   A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—
   for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

*Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

### 2

### Standing

DeFelice claims that § 523(c)[2] limits standing to sue under § 523(a)(2)(A) to creditors to whom the allegedly nondischargeable debts are owed.[3] Asserting that § 523(c) is clear and unambiguous, DeFelice argues that it should not be stretched beyond its statutory contours to embrace a state policy consideration not contemplated by Congress. DeFelice reminds the court that "[i]t is the responsibility of courts to construe, not reconstruct, the law." *In re Maiorino,* 15 B.R. 254, 258 (Bankr.D.Conn.1981).

The Attorney General, on the other hand, submits that New York Executive Law § 63(12)[4] empowers him to act on behalf of victims of fraud and that public policy favors granting the Attorney General standing in dischargeability litigation to implement the state's statutory scheme. Alternatively, the Attorney General claims that his standing to maintain this proceeding is based upon the doctrine of *parens patriae.* For the reasons that follow, DeFelice's motion to dismiss is denied.

### a.

### *Public Policy*

While the principle of construction urged by DeFelice is sound, it is well settled that "Congress did not intend for bankruptcy laws to abrogate the States' police powers." *In re Berry Estates,* 812 F.2d 67, 71 (2d Cir.1987). Indeed, bankruptcy and state law are accommodated by a judicially created concept granting deference to state policies that do not conflict with federal law. *See Kelly v. Robinson,* —— U.S. ——, 107 S.Ct. 353, 359, 93 L.Ed.2d 216 (1986); *Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986). There is no such conflict here.

It is fundamental that bankruptcy court is not to be used as "a haven for wrongdoers". *In re Berry Estates, supra,* 812 F.2d at 71 (*citing In re Flight Transp. Corp. Securities Litigation,* 730 F.2d 1128, 1136–37 (8th Cir.1984), *cert. denied,* 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985); *In re Teltronics, Ltd.,* 649 F.2d 1236, 1239–42 (7th Cir.1981); 2 *Collier on Bankruptcy* ¶ 362.05, at 362–42). Section 63(12), which authorizes the Attorney General to institute civil actions and seek restitution, among other sanctions, is a codification of that state's public policy of prohibiting deceptive business practices and protecting vulnerable consumers. *See Giummo v. Citibank, N.A.,* 107 Misc.2d 895, 436 N.Y.S.2d 172, 174 (N.Y.Civ.Ct. 1981).

I disagree with DeFelice's argument that § 523(c) must be applied literally. The district court in *People of the State of New York v. Hemingway (In re Hemingway),* 39 B.R. 619 (N.D.N.Y.1983) reached a similar conclusion and permitted the Attorney General to challenge the dischargeability of a restitution debt ordered by the state court under § 63(12) for the benefit of consumers. I therefore decline to follow *Minnesota v. Pierson (In re Pierson),* 17 B.R. 822 (Bankr.D.Minn.1982) as DeFelice

---

**2.** Section 523(c) provides in pertinent part:

[T]he debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, *on request of the creditor to whom such debt is owed,* and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section (emphasis added).

**3.** No individual creditors filed complaints challenging dischargeability prior to the expiration of the bar date set in this case.

**4.** Section 63(12) of the Executive Law of New York provides in pertinent part:

Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages....

urges. The *Pierson* court held that although the state had filed three criminal complaints against the debtor, and apparently intended to seek restitution for injured creditors, it did not have standing to challenge dischargeability under § 523(a)(2)(A) since it was not a creditor to whom a debt was owed. DeFelice's reliance on *Missouri ex rel. Ashcroft v. Cannon (In re Cannon)*, 31 B.R. 823 (Bankr.E.D.Mo.), *aff'd*, 36 B.R. 450 (E.D.Mo.1983), *aff'd*, 741 F.2d 1139 (8th Cir.1984), is also misplaced. Unlike § 63(12), the Missouri consumer protection statute at issue in that proceeding did not authorize the Attorney General to recover restitution on behalf of individual consumers. Rather, the Attorney General was limited by law solely to seeking injunctive relief. Indeed, the *Cannon* court, citing *Kansas ex rel. Miller v. Bradbury*, 4 B.C.D. 263 (Bankr.D.Kan. 1978), distinguished the Missouri Merchandising Practices Act from the Kansas Consumer Protection Act under which that state's Attorney General had been granted creditor status on the ground that the Kansas statute specifically authorized the Attorney General to recover damages on behalf of consumers. *Cannon, supra*, 31 B.R. at 826.[5]

DeFelice also argues that Congress has restricted governmental challenges to dischargeability of debts arising out of the violation of a state's regulatory powers to actions brought under § 523(a)(7).[6] I disagree. It does not follow that § 523(a)(7) is an exclusive remedy, and DeFelice has cited no court decision or commentary to support his contention.

Code subsections 362(b)(4) and (5)[7] permit a state to commence or continue an action to enforce its police or regulatory powers without the restraint of the automatic stay. The legislative history of these subsections reveals a congressional intent to protect the economic welfare of consumers as well as public health and safety interests:

> "Thus, where a governmental unit is suing a debtor to prevent or stop violation of *fraud*, environmental protection, *consumer protection*, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.... [T]he exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment." (emphasis added)

H.R.Rep. No. 595, 95th Cong., 1st Sess. 343, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6299; S.Rep. No. 989, 95th Cong.2d Sess. 52, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5838. It would be anomalous for a state to be permitted to institute or continue such an action but lack standing to challenge the dischargeability of the underlying debt necessary to make that action meaningful. Accordingly, I find that public policy considerations favor the conclusion that the Attorney General has standing to maintain this proceeding on behalf of DeFelice's consumer creditors.

> The filing of a petition under section 301, 302, or 303 of this title, ... does not operate as a stay—
>
> under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
>
> under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

---

**5.** Neither *Pierson* nor *Cannon* relied on the doctrine of *parens patriae* as a basis for standing. *See infra* p. 380.

**6.** Code § 523(a)(7) provides that:
A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—
to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty.

**7.** Code subsections 362(b)(4) and (5) provide that:

### b.

### Parens Patriae

■ Apart from the public policy considerations recounted above, I also conclude that the Attorney General has standing to maintain this action against DeFelice under the doctrine of *parens patriae.*

The Supreme Court in *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,* 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982) held that in order to have standing under the doctrine of *parens patriae,* a state must "articulate an interest apart from the interests of particular private parties, i.e., the State must be more than a nominal party." *Id.* at 607, 102 S.Ct. at 3268. That element was recently emphasized by the Court of Appeals for this circuit in *People of the State of New York by Abrams v. Seneci,* 817 F.2d 1015 (2nd Cir.1987),

A state that sues as *parens patriae* must seek to redress an injury to an interest that is separate from the interests of particular individuals. The state cannot merely litigate as a volunteer the personal claims of its competent citizens (citations omitted).

*Id.* at 1017. The *Snapp* court also held that a state must satisfy a numerosity test, that is, the state must allege an "injury to a sufficiently substantial segment of its population." *Alfred L. Snapp & Son, Inc., supra,* 458 U.S. at 607, 102 S.Ct. at 3269. Finally, the doctrine of *parens patriae* has been given additional definition by the Court of Appeals for the Second Circuit in *People of the State of New York by Abrams v. 11 Cornwell Co.,* 695 F.2d 34 (2d Cir.1982) *modified on other grounds,* 718 F.2d 22 (2d Cir.1983) (en banc), which held that such "standing also requires a finding that individuals could not obtain complete relief through a private suit." *Id.* at 40. DeFelice has challenged the Attorney General's standing as to each of these elements.

### Quasi-Sovereign Interest

As the Court in *Snapp* observed, a state's standing to litigate in its capacity as *parens patriae* may be predicated upon its quasi-sovereign interest in protecting the "health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc., supra,* 458 U.S. at 607, 102 S.Ct. at 3269. The Court further stated that:

One helpful indication in determining whether an alleged injury to the health and welfare of its citizens suffices to give the State standing to sue as *parens patriae* is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers.

*Id.* Section 63(12) of the Executive Law of New York is such legislation. As the district court observed in *Hemingway, supra,* involving similar facts, "one would be hard-pressed to argue that protection against consumer fraud is *not* a subject of vital importance to the economic well-being of the citizens of New York State." *Id.* at 622 (emphasis in original).

Contrary to DeFelice's assertion that the Attorney General is a nominal party in this action, it is clear, as the Assistant Attorney General persuasively argues, that the state's interest in vindicating its consumer protection laws in its courts is directly linked to its attempt to block the discharge of listed debts in this court so that a discharge here does not preclude restitution there. The fact that individual consumers would also benefit from the Attorney General's action does not subvert that quasi-sovereign interest. *Cf. Kelly v. Robinson, supra,* 107 S.Ct. at 362.

For the same reason, DeFelice's argument that the Attorney General may not litigate as *parens patriae* on behalf of creditors who are not citizens of New York must also fail. New York does not and need not limit its interest in consumer protection to its citizens. New York's quasi-sovereign interest is served whenever the perpetrators of consumer fraud within its borders are brought to justice regardless of whether their victims happen to be citizens. *See People of the State of New York by Abrams v. Camera Warehouse, Inc.,* 130 Misc.2d 498, 496 N.Y.S.2d 659, 660 (N.Y.Sup.Ct.1985) (*citing Brown v. Market*

*Development, Inc.,* 41 Ohio Misc. 57, 322 N.E.2d 367 [1974]; *Kugler v. Haitian Tours, Inc.,* 120 N.J.Super. 260, 293 A.2d 706 [1972]).

## Numerosity Test

In determining whether the Attorney General has satisfied the numerosity test noted in *Alfred L. Snapp & Son, Inc., supra,* 458 U.S. at 607, 102 S.Ct. at 3269, "the indirect effects of the injury" as well as the direct effect upon the listed creditors must be considered. *Id.* Such an inquiry clearly demonstrates that more than the interests of the fifty-one listed consumer creditors are involved in this litigation. As noted, the state's quasi-sovereign interest is directed at the vindication of New York's consumer protection laws for all of its citizens. *See Hemingway, supra,* 39 B.R. at 622; *11 Cornwell Co., supra,* 695 F.2d at 39–40.

## Complete Relief Through Private Suit

DeFelice's contention that the individual consumer creditors could obtain complete relief through a private suit suffers from a myopic view of this bankruptcy proceeding. The adversary proceeding here is merely one step towards the goal of complete relief. If the Attorney General is successful in this court, the debts owed to the affected creditors will not be discharged. Other steps will then have to be taken if complete relief in the form of full payment of their claims is to be achieved.

Section 63(12) of the Executive Law of the State of New York was enacted in recognition of the reality that the victims of consumer fraud need assistance from the state in order to maximize their chances for recovery.[8] *See Giummo, supra,* 436 N.Y.S.2d at 174. No private right exists under that law. Only the Attorney General is authorized, under § 63(12), to pursue a remedy, including restitution, which if ordered by the state court, will be paid to the Attorney General for distribution to the defrauded creditors. I therefore find that the Attorney General has sustained the burden of proving that complete relief is unavailable to the individual

creditors without the assistance of the state seeking an order of restitution under § 63(12). *See Hemingway, supra,* 39 B.R. at 622. Thus, the *Cornwell* test has been met. *11 Cornwell Co., supra,* 695 F.2d at 40.

### 3

### Conclusion

For the foregoing reasons, I conclude that the Attorney General has standing to prosecute the third cause of action in his amended complaint, and DeFelice's motion to strike, treated here as a motion to dismiss, is denied, and IT IS SO ORDERED.

---

**8.** That policy is consistent with congressional intent to prevent use of the bankruptcy courts as a haven for the wrongdoer. *In re Berry Estates, supra,* 812 F.2d at 71.