**PEOPLE of the State of New York, Plaintiff,**

v.

**PETER & JOHN'S PUMP HOUSE, INC., d/b/a Club Chameleon, Defendant.**

Civil Action No. 94–CV–1319 (RSP/GJD).

United States District Court, N.D. New York.

Jan. 29, 1996.

Dennis C. Vacco, Attorney General, Syracuse, NY (Michael J. Hungerford, Barbara A. Mehlman, Assistant Attorneys General, of counsel), for Plaintiff.

Bond, Schoeneck & King, L.L.P., Syracuse, NY (Raymond J. Pascucci, of counsel), for Defendant.

## MEMORANDUM–DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

Defendant Peter & John's Pump House, Inc., d/b/a Club Chameleon (the "Club") moved to dismiss the complaint of the People of the State of New York (the "State") pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). The Club chiefly contends that plaintiff lacks standing to pursue its federal claims.

### BACKGROUND

Because defendant moved to dismiss the State's complaint under Rule 12(b), for the purposes of this decision I will accept as true all of the allegations in the complaint and draw inferences from these allegations in the light most favorable to plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–

02, 2 L.Ed.2d 80 (1957)). The State commenced this action on October 11, 1994, against defendant, which operates a nightclub in Syracuse, New York.[1]

In its complaint, the State alleges that defendant "has engaged and continues to engage in a practice and policy of refusing admission to African Americans because of their race or color, by requiring African Americans to present proof of age that is not demanded of white patrons, or imposing a dress code on African Americans not imposed on white patrons." Compl. ¶ 8. The complaint provides eight examples of defendant's discriminatory conduct by describing incidents involving sixteen individuals that took place between August 1993 and April 1994. *Id.* ¶ 9. The Club has denied engaging in any discriminatory conduct. Answer ¶ 4.

The State contends that defendant's discriminatory conduct violated Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq., and 42 U.S.C. § 1981. The complaint also alleges that the Club violated various state laws: N.Y.Exec.L. §§ 63(12), 296(2)(a) (McKinney 1992); N.Y.Civ.Rights L. §§ 40, 40–c (McKinney 1992); and N.Y.Alco.Bev.Cont.L. § 65(4) (McKinney Supp.1996). The State seeks declaratory and injunctive relief, compensatory and punitive damages, statutory penalties, and attorney's fees and costs.

The Club moved to dismiss plaintiff's complaint on the ground that the State failed to establish *parens patriae* standing. The Club also moved to dismiss plaintiff's pendent state law claims. The State opposed the motion, and oral argument took place on May 22, 1995.

**DISCUSSION**

**I. Standard**

■ *Parens patriae* standing has its roots in the English common law, which recognized the "royal prerogative" of the state to care for the legal affairs of infants, idiots and lunatics. *See Alfred L. Snapp & Son, Inc., v. Puerto Rico,* 458 U.S. 592, 600, 102 S.Ct. 3260, 3265, 73 L.Ed.2d 995 (1982) (citing cases). However, *parens patriae* standing in American courts must involve more than a state merely stepping in to represent the interests of particular citizens. *Id.* The state "must assert an injury to what has been characterized as a 'quasi-sovereign' interest, which is a judicial construct that does not lend itself to a simple or exact definition." *Id.* at 601, 102 S.Ct. at 3265. Quasi-sovereign interests are those that "the State has in the well-being of its populace," but these interests must be "sufficiently concrete to create an actual controversy between the State and the defendant." *Id.* at 602, 102 S.Ct. at 3266.

■ After surveying the doctrine's history, the Supreme Court in *Snapp* established the following requirements for *parens patriae* standing: (1) the state must express a quasi-sovereign interest, which is an interest apart from the interests of the particular private parties; and (2) the state must allege injury to a sufficiently substantial segment of its population.[2] *Snapp,* 458 U.S. at 607, 102 S.Ct. at 3268–69. Additionally, the United States Court of Appeals for the Second Circuit interpreted *Snapp* to require a finding that individuals could not obtain complete relief through a private suit.[3] *People of the State of New York v. 11 Cornwell Co.,* 695

---

1. The parties' allegations in the pleadings are the sole source for my recitation of the facts, even though the State filed an affidavit introducing facts and evidence outside the pleadings. I decline to convert defendant's motion into one for summary judgment and instead will exclude the State's additional materials. *See* Fed.R.Civ.P. 12(b) and 12(c).

2. Courts in this circuit have enumerated the requirements differently or focused on different aspects of the test, but they agree on the relevant considerations. *Compare, e.g., People of the State of New York v. Mid Hudson Medical Group, P.C.,*

877 F.Supp. 143, 146 (S.D.N.Y.1995) *with People of the State of New York v. Holiday Inns, Inc.,* 656 F.Supp. 675, 677 (W.D.N.Y.1984).

3. This "additional" requirement is consistent with the Supreme Court's statement that a state acting merely as a nominal party has no *parens patriae* standing. *Snapp,* 458 U.S. at 600, 102 S.Ct. at 3265. In other words, if the state has no quasi-sovereign interest apart from the interests of private individuals, who can obtain complete relief through their own litigation, then no *parens patriae* standing exists.

F.2d 34, 40 (2d Cir.1982), *vacated in part on other grounds,* 718 F.2d 22 (2d Cir.1983) (*en banc*); *see also Mid Hudson Medical Group,* 877 F.Supp. at 148–49; *Holiday Inns,* 656 F.Supp. at 678; *In re John DeFelice,* 77 B.R. 376, 380 (Bankr.D.Conn.1987).

## II. Quasi-sovereign interest

■ Defendant concedes that the State has a quasi-sovereign interest in preventing racial discrimination of its citizens. Def.Reply Mem. at 1. Indeed, the Second Circuit expressly has acknowledged this quasi-sovereign interest. *11 Cornwell Co.,* 695 F.2d at 39.

## III. Affected state population

■ The Club argues that the State failed to allege injury to a sufficiently substantial segment of its population because its complaint contains allegations concerning only eight [4] African Americans, resulting in the *de minimis* proportion of 0.00004 percent of New York's total population. The Club contends that the State must do more than assert that the individuals described in the complaint are examples of a larger group of purported victims or claim general societal harm from discriminatory practices. The State responds that the individual instances of discrimination noted in its complaint are illustrative examples of the Club's wide-reaching conduct, which affects many African Americans as well as the general fabric of society.

■ There is no numerical talisman to establish *parens patriae* standing:

> The [Supreme] Court has not attempted to draw any definitive limits on the proportion of the population of the State that must be adversely affected by the challenged behavior. Although more must be alleged than injury to an identifiable group of individual residents, the indirect effects of the injury must be considered as well in determining whether the State has alleged injury to a sufficiently substantial segment of its population.

*Snapp,* 458 U.S. at 607, 102 S.Ct. at 3269. The "raw number of individuals directly involved" in the alleged discrimination thus is not determinative. *Mid Hudson Medical Group,* 877 F.Supp. at 148.

The majority of courts in this circuit broadly construe the "substantial segment" requirement of *parens patriae* standing. For example, in *11 Cornwell Co., parens patriae* standing existed where the state alleged discrimination against eight to ten proposed group home residents who were mentally retarded because future group home residents, people living in mental health institutions, and the community at large also would be affected "were this kind of incident to be tolerated without redress." *11 Cornwell Co.,* 695 F.2d at 39–40. Similarly, *parens patriae* standing existed where the state alleged discrimination against fifteen proposed group home residents who had AIDS because the discrimination affected future group home residents, the community at large, and the entire population of people with AIDS. *Support Ministries for Persons with Aids, Inc. v. Village of Waterford,* 799 F.Supp. 272, 277 (N.D.N.Y.1992) (Smith, M.J.). In a bankruptcy case, the district court found that the state had *parens patriae* standing because although only six consumers were named in the litigation, the lawsuit implicated a "much broader scheme of consumer protection." *In re Gary W. Hemingway,* 39 B.R. 619, 622 (N.D.N.Y.1983). Finally, in *Mid Hudson Medical Group,* the district court found *parens patriae* standing where the state alleged that a hospital discriminated against its seven to ten hearing-impaired patients because the effect of the discrimination "threatens all hearing impaired citizens and perhaps disabled citizens throughout New York." *Mid Hudson Medical Group,* 877 F.Supp. at 148. As discussed more fully below, the State's allegations of injury in this case clearly fall within acceptable parameters for meeting the substantial segment requirement.

The Club relies on *Holiday Inns,* which involved a lawsuit by the New York Attorney General and ten named plaintiffs against a hotel chain alleging employment discrimina-

---

**4.** Read in the light most favorable to plaintiffs, the complaint contains allegations of racial discrimination involving sixteen individuals attempting to patronize the Club. Compl. ¶ 9.

tion based on age and gender. *Holiday Inns,* 656 F.Supp. at 676–77. The district court held that "[d]espite plaintiffs' assertions that countless other employees may be subjected to defendants' discriminatory practice of discharging older employees and that younger employees and customers of defendants would be deprived of the opportunity to work with or be served by employees of all ages," plaintiffs failed to allege injury to a sufficiently substantial segment of the population. *Id.* at 677. I respectfully decline to follow the analysis of *Holiday Inns.* Setting aside the fact that this holding is more narrow than that of other courts considering the substantial segment requirement, I distinguish *Holiday Inns* from this case because it did not involve generalized discrimination against potential nightclub patrons or even potential group home residents. In a case of employment discrimination, hiring and discharge records exist to identify private plaintiffs. In this case, however, the alleged discrimination affects a larger population, and there is no accurate method to determine how many African Americans may have been denied access to the Club because of their race.

Accepting, as I must, the truth of plaintiff's allegations, the State alleged injury to more than an identifiable group of individual residents. *See Snapp,* 458 U.S. at 607, 102 S.Ct. at 3268–69. By the express language of the complaint, the individual incidents of discrimination are examples of defendant's illegal conduct. Compl. ¶ 9. In addition, the complaint alleges a "practice and policy" of discrimination, which necessarily involves a larger group of patrons. *Id.* ¶ 8. As noted by at least one other district court, the "Attorney General's use of a small group of 'aggrieved persons' as exemplars for a larger class is neither new nor objectionable and does not render him a nominal party." *Mid Hudson Medical Group,* 877 F.Supp. at 147. The State alleges discrimination that has a destructive societal effect justifying *parens patriae* standing. *See Snapp,* 458 U.S. at 609, 102 S.Ct. at 3269–70 (holding that "state interest in securing residents from the harmful effects of discrimination" outweighs "narrow" view that only 787 jobs were affected). The State therefore alleged injury to a sufficiently substantial segment of its population.

## IV. Complete private relief

■ Finally, the Club argues that no *parens patriae* standing exists because the alleged victims of racial discrimination can obtain complete relief through private litigation. The State responds that the interests of the State and individual victims are not coextensive. Plaintiff argues that a private litigant might forego injunctive relief in favor of increased money damages, whereas the State is most interested in preventing future discrimination. In addition, the State argues that it is speculative whether private individuals would pursue costly litigation against the Club.

In the absence of the State as plaintiff, the alleged victims of the Club's discrimination could not obtain complete relief. As noted previously, the State alleges that the victims are not limited to the sixteen individuals described in the complaint. Other district courts have recognized that the relief sought in discrimination lawsuits often carries greater implications and a "broader scope" than the denial of benefits, services, or accommodation to known individuals. *See Mid Hudson Medical Group,* 877 F.Supp. at 149.

■ Additionally, the interests of the State and private individuals are not coextensive because the State seeks to enjoin the Club's overall practice and policy of discrimination whereas individual plaintiffs would have much narrower interests. Private litigants might not achieve the complete relief that the State seeks because they have a greater incentive to compromise requests for injunctive relief in exchange for increased money damages. *See Waterford,* 799 F.Supp. at 278. Contrary to defendant's assertion, it is relevant that private litigants might not have the tenacity or fortitude to sue the Club. The State is in the best position to protect societal interests because "the vindication of the rights of New Yorkers to be free from discrimination ... cannot be made dependent on the actions and potentially limited resources of private parties." *Id.* at 278–79.

■ The Club again relies on *Holiday Inns* for support of its position. In *Holiday Inns,* the district court held that the state lacked *parens patriae* standing because the

ten named individual plaintiffs had standing and could obtain reinstatement, monetary damages and future injunctive relief. *Holiday Inns*, 656 F.Supp. at 678. As discussed above, however, I decline to follow *Holiday Inns* and instead will adhere to Second Circuit precedent taking a broader view of *parens patriae* standing requirements. The "remote possibility" that individuals could seek relief from defendant does not preclude the State's action. *See Mid Hudson Medical Group*, 877 F.Supp. at 149. Therefore, I find that the alleged victims of defendant's discrimination could not obtain complete relief through private litigation.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint is denied. Because plaintiff's state law claims derive from the same facts as its federal causes of action, I will exercise the court's pendent jurisdiction over these claims as well. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

IT IS SO ORDERED.