**In re Casimir Stanley SUWINSKI, Jr., Debtor.**

**Ohio Attorney General, Plaintiff,**

**v.**

**Casimir Stanley Suwinski, Jr., Defendant.**

Bankruptcy No. 11–61220.
Adversary No. 12–2060.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Filed March 27, 2013.

Donn D. Rosenblum, Attorney General of Ohio, Lucas Ward, Columbus, OH, for Plaintiff.

Theodore R Saker, Jr., Saker Law Offices, Columbus, OH, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY OF CERTAIN DEBTS

### (Related to Doc. 22)

C. KATHRYN PRESTON, Bankruptcy Judge.

### I. Introduction

This cause came on for consideration of Defendant Casimir S. Suwinski, Jr.'s ("Defendant") Motion to Dismiss ("Motion") (Doc. 22) the Complaint to Determine Dischargeability of Certain Debts ("Complaint") (Doc. 1) filed by Ohio Attorney General, Michael DeWine ("Plaintiff"). Pending before the Court are the Motion, Plaintiff's response and Defendant's reply. The Motion, response and reply raise the issue of Plaintiff's standing to pursue a determination of nondischargeability of debt on behalf of ninety-two consumers ("the Consumers") who filed complaints with Plaintiff's office. The only issue before the Court is whether Plaintiff falls within the meaning of the term "creditor" for purposes of § 523(c). For the reasons explained below, the Court concludes that Plaintiff has standing to pursue a nondis-

chargeability action against Defendant on behalf of the Consumers.

## II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and General Order # 05–02 entered by the U.S. District Court for the Southern District of Ohio, referring all bankruptcy matters to this Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## III. Factual Background

On November 4, 2011 ("Petition Date"), Defendant filed his Petition for Relief under Chapter 7 of the Bankruptcy Code. Prior to the Petition Date, Defendant operated a company known as National Homeownership Assistance Foundation, Ltd. ("NHAF") and served as its president. NHAF was engaged in the business of advertising, soliciting, offering and selling residential loan modification services to financially distressed consumers in the State of Ohio, and in other states. In connection with the business, Defendant made verbal and written representations and claims to consumers, directly or through third parties with whom he contracted and/or trained, regarding the specific terms, availability and guarantee related to NHAF's services. Many Ohio consumers nearing or facing foreclosure actions contracted with NHAF for loan modification services, which led to 92 consumer complaints filed with Plaintiff.

On September 15, 2010, Plaintiff filed a complaint against Defendant, NHAF and two other individual co-defendants, including Defendant's father, Casimir Suwinski, Sr. ("Suwinski") and Arden Banks ("Arden"). The complaint, filed in the Franklin County Court of Common Pleas, alleged numerous violations of the Ohio Consumer Sales Practices Act ("CSPA"), Ohio Rev.Code § 1345.01, *et seq.*, and the Debt Adjusters Act ("DAA"), Ohio Rev.

Code § 4712.01, *et seq.* Plaintiff alleged that Defendant, directly and through his business, obtained payments from the Consumers for the purchase of NHAF's services which NHAF failed to deliver. Plaintiff alleged that Defendant, directly and through NHAF, received funds exceeding $223,700 from the Consumers as a result of his false or misleading representations about NHAF's services. Plaintiff sought, among other things, monetary judgment for consumer restitution pursuant to Ohio Rev.Code § 1345.07(B) in an amount not less than $223,700. A default judgment was entered against NHAF and Arden. On January 6, 2012, the parties consented to a permanent injunction, whereby NHAF and Defendant were enjoined from conducting any further business in violation of Ohio consumer laws. The Common Pleas court has not entered a judgment, order or finding that Plaintiff or the Consumers are entitled to any monetary damages, attorney's fees or costs. The Common Pleas action is still pending against Defendant and Suwinski.

On February 10, 2012, Plaintiff filed the Complaint, seeking a judgment declaring that Defendant's obligation to provide consumer restitution is nondischargeable pursuant to § 523(a)(2)(A).

## IV. Arguments of the Parties

Defendant asserts that Plaintiff lacks standing to challenge the dischargeability of his debts, because Plaintiff does not have an enforceable obligation against Defendant, which precludes Plaintiff from pursuing an action under § 523(a)(2)(A). Defendant requests dismissal of the Complaint, arguing that § 523(c)(1) only grants standing to creditors directly owed payment by a debtor. Defendant does not deny that Plaintiff has a statutory obligation to protect Ohio consumers under the CSPA and DAA. However, Defendant asserts that Plaintiff is not a congression-

ally or constitutionally formed entity able to act on behalf of the Consumers. Defendant does concede that Plaintiff would have standing to pursue an action to determine dischargeability of the debt if Plaintiff had obtained a final judgment in the pending lawsuit prior to Defendant's petition for relief. However, Defendant argues, because Plaintiff has not obtained a final judgment, Plaintiff lacks standing to pursue this adversary proceeding.

Plaintiff alleges that Defendant fraudulently obtained money from the Consumers and neither provided loan modification services nor refunded the payments as guaranteed. Plaintiff asserts that he has standing under Ohio law to bring the instant action based upon four theories: (1) the doctrine of *parens patriae*, (2) the statutory enforcement scheme, (3) public policy considerations, and (4) the definition of the term "claim" under the Bankruptcy Code. Moreover, according to Plaintiff, the facts giving rise to each injury suffered by the Consumers are so similar that they warrant a single action.

### V. Legal Analysis

■ In a dischargeability action the creditor bears the burden of proving each element of its claim by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir.1998); Fed. R. Bankr.P. 4005. The Court must construe exceptions to discharge narrowly. *Rembert*, 141 F.3d at 281; *Ker v. Ker (In re Ker)*, 365 B.R. 807, 812 (Bankr.S.D.Ohio 2007) ("In order to afford the honest but unfortunate debtor a fresh start, the Court narrowly construes exceptions to dis-

charge."). Even so, "[a] discharge under § 727 is a privilege, not a right ... and may only be granted to the honest debtor." *Congress Talcott Corp. v. Sicari (In re Sicari)*, 187 B.R. 861, 880 (Bankr.S.D.N.Y. 1994).

### A. The Doctrine of *Parens Patriae* Provides Plaintiff with Standing to Object to the Dischargeability of Certain Debts on Behalf of Consumer Creditors

■ Plaintiff has standing to pursue a nondischargeability action against Defendant on behalf of the Consumers pursuant to the doctrine of *parens patriae*.

### 1. The Doctrine of *Parens Patriae*

■ Courts have used the doctrine of *parens patriae*[1] to recognize standing where the government action relates to a quasi-sovereign interest and is not just a private dispute. The Ohio Supreme Court has long recognized the attorney general's power in "contesting infringements on the rights of the general public via the doctrine of *parens patriae*". *Ohio v. United Transp., Inc.*, 506 F.Supp. 1278, 1281–82 (S.D.Ohio 1981). Consequently, courts have recognized the doctrine of *parens patriae* in the context of dischargeability proceedings. *Kelley v. Sclater (In re Sclater)*, 40 B.R. 594, 597–98 (Bankr.E.D.Mich. 1984) ("The use of the *parens patriae* doctrine to establish the Attorney General's standing in this proceeding is in direct conformity with the [guidelines set forth in *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982) ].")." *The articulation of parens patriae* interests must be undertaken on a case-by-case basis, and cannot

---

**1.** "'Parens patriae,' literally 'parent of the country,' refers traditionally to role of state as sovereign and guardian of persons under a legal disability." *Alfred L. Snapp & Son, Inc.*

*v. Puerto Rico*, 458 U.S. 592, 600 n. 8, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982) (citation omitted).

be tailored down to an exhaustive list. *Snapp,* 458 U.S. at 607, 102 S.Ct. 3260. To have standing under the doctrine of *parens patriae,* the governmental entity must establish the following elements: (1) the state must have a quasi-sovereign interest, apart from the interests of particular private parties; and (2) there must be an injury to a substantial segment of its population. *Snapp,* 458 U.S. at 607, 102 S.Ct. 3260.

■ Justice Brennan stressed in his concurring opinion in *Snapp:*

> [A] State is no ordinary litigant. As a sovereign entity, a State is entitled to assess its needs, and decide which concerns of its citizens warrant its protection and intervention. I know of nothing—except the Constitution or overriding federal law—that might lead a federal court to superimpose its judgment for that of a State *with respect to the substantiality or legitimacy of a State's assertion of sovereign interest.*

*Snapp,* 458 U.S. at 612, 102 S.Ct. 3260 (emphasis added). As Justice Cardozo emphasized over seventy years ago, "Aside from the direct interest of the state in the preservation of agencies established for the common good, there is thus the duty of the parens patriae to keep faith with those who have put their trust in the parental power." *Hopkins Fed. Sav. & Loan Ass'n v. Cleary,* 296 U.S. 315, 340, 56 S.Ct. 235, 242, 80 L.Ed. 251 (1935). The *parens patriae* doctrine "creates an exception to normal rules of standing applied to private citizens in recognition of the special role that a State plays in pursuing its quasi-sovereign interests in 'the well-being of its populace.'" *Estados Unidos Mexicanos v. DeCoster,* 229 F.3d 332, 335 (1st Cir.2000) (quoting *Snapp,* 458 U.S. at 602, 102 S.Ct. 3260).

### a. Prong 1: Quasi–Sovereign Interest

■ To determine whether an alleged injury to the health and welfare of its citizens suffices to afford the state standing to sue, one must consider the indirect effects of the injury and whether the injury is one that the state, if it could, would likely attempt to address through its sovereign lawmaking powers. *Snapp,* 458 U.S. at 607, 102 S.Ct. 3260. In the context of a bankruptcy case, courts have held that a state attorney general has *parens patriae* standing to challenge dischargeability of debt in bankruptcy proceedings when the state has a quasi-sovereign interest in protecting the economic well-being of its citizens from consumer fraud. *See New York v. Hemingway (In re Hemingway),* 39 B.R. 619, 622 (N.D.N.Y.1983) ("In the present case, the injury which the State of New York seeks to redress is one that has already been the subject of legislative attention, to wit, New York's consumer protection laws.").

"This case does not involve purely private disputes ... It is undisputed that the [state] has a quasi-sovereign interest in the [economic] well-being of its citizens ... The [state] has an interest beyond that of each individual in ensuring that those who do business within this state comport with a basic level of fairness in all their dealings." *Massachusetts v. Bartel (In re Bartel),* 403 B.R. 173, 176 (Bankr.D.Mass. 2009) (citing *Snapp,* 458 U.S. at 607, 102 S.Ct. 3260). Plaintiff asserts that state attorneys general have standing to represent and act on behalf of consumers victimized by practices declared unlawful under consumer protection legislation. In Ohio, the CSPA addresses matters of consumer fraud. The indirect effects indicated by Plaintiff's allegations are significant; if individuals and businesses are allowed to continue defrauding the public at large, their actions would have substantial detri-

mental effects on Ohio housing and money markets, among other harms. The potential for indirect injury to the state as a result of the foreclosures and economic losses suffered due to the alleged fraudulent practices would be even broader than those suffered by any one of those 92 individuals. The state has a great interest in protecting its citizens from losing property due to fraudulent practices, as proved by the enactment of statutes like the CSPA. *See Snapp*, 458 U.S. at 607, 102 S.Ct. 3260 ("a [s]tate has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general."). In fact, the powers granted to Plaintiff under Ohio Rev.Code § 1345.07 show that this is precisely the type of case in which the state legislature expected the attorney general to pursue on behalf of the public. *See, e.g.,* Ohio Rev.Code § 1345.07(A)(3) and (B).[2]

### b. Prong 2: Injury to Substantial Segment of Population

In addition to identifying a quasi-sovereign interest to assert *parens patriae* standing, Plaintiff must also allege an "injury to a sufficiently substantial segment of its population." *Snapp*, 458 U.S. at 607, 102 S.Ct. 3260. The number of injured citizens required to meet the second prong has not been delineated by the Supreme Court. "[R]ather, such determination must be made based on pertinent circumstances. The Supreme Court has indicated, however, that courts must consider both the 'direct' and 'indirect' effects of an alleged injury when making this determination." *Illinois v. Volpert (In re Volpert)*, 175 B.R. 247, 257 (Bankr.N.D.Ill.

1994) (citing *Snapp*, 458 U.S. at 607, 102 S.Ct. 3260). *See also Massachusetts v. Bull HN Info. Sys., Inc.*, 16 F.Supp.2d 90, 101 (D.Mass.1998) (finding *parens patriae* standing for 55 individuals upon the grounds that the indirect effects would affect a broad portion of the state's population: "If the Attorney General is barred from pursuing this action on standing grounds, the [invalid waivers of Age Discrimination in Employment Act rights at issue] would be functionally immunized from legal challenge.").

The numerosity requirement for *parens patriae* standing has been satisfied in cases involving as few as 64, 51, and six consumers. *See In re Taibbi*, 213 B.R. 261, 270–71 (Bankr.E.D.N.Y.1997) (concluding that county consumer protection agency had standing via both statute and *parens patriae* to file a complaint objecting to the discharge of the debtors or to determine the dischargeability of certain debts on behalf of 64 consumer creditors); *New York v. DeFelice (In re DeFelice)*, 77 B.R. 376, 381 (Bankr.D.Conn.1987) (holding that the numerosity element of the *parens patriae* test was satisfied where the state was seeking to protect the interest of 51 consumers, and that plaintiff had standing to maintain dischargeability action on behalf of such consumers); *Hemingway*, 39 B.R. at 622 (holding that state had *parens patriae* standing to prosecute dischargeability complaint as a representative of six consumers who were beneficiaries under a restitution order); *Volpert*, 175 B.R. at 257 (holding that 55 people represented a substantial segment of the population); *Bartel*, 403 B.R. at 177 (concluding that sub-

---

**2.** In short, § 1345.07(A)(3) and (B) authorizes the state attorney general to seek remedies for violation of Ohio Revised Code Chapter 1345, stating in part that: "(A) [T]he attorney general may bring any of the following: ... (3) A class action under Civil Rule 23, ... for damage ... (B) [I]n the attorney general's action

under this section, the court may make appropriate orders, including ... for sequestration of assets, to reimburse consumers found to have been damaged, ... or to grant other appropriate relief." Ohio Rev.Code § 1345.07.

stantial segment of population requirement satisfied where the Commonwealth of Massachusetts sought to protect only 20 homeowners). The Court therefore concludes that the second prong of the *Snapp* test is met, as the affected 92 consumers represent a substantial segment of the population.

### c. Individuals Could Not Obtain Complete Relief Through Private Suit

Some courts have further interpreted the *Snapp* test to include a third prong requiring a finding that individuals could not obtain complete relief through a private suit. *See New York v. 11 Cornwell Co.,* 695 F.2d 34, 40 (2nd Cir.1982). A statute's inclusion of a private right of action does not diminish the state's ability to achieve standing under *parens patriae,* especially when any possible damage award would be "too small to warrant the engagement of counsel to file an adversary proceeding," or where affected consumers may have relied upon the state to prosecute their claims. *Taibbi,* 213 B.R. at 271. In *Bull,* the court refined the third prong to focus on the goals of the state. *Bull,* 16 F.Supp.2d at 101 (citing *People v. Peter & John's Pump House, Inc.,* 914 F.Supp. 809, 812 n. 3 (N.D.N.Y.1996) ("[I]f the state has no quasi-sovereign interest apart from the interests of private individuals, who can obtain complete relief through their own litigation, then no *parens patriae* standing exists.")). The *Bull* court observed that "courts typically find that this requirement is satisfied when the relief sought by the state is broader than that which would be sought by private litigants." *Id.* The *Bull* court found further support when private litigants lack the for-

titude or resources to pursue relief. *Id.* The "remote possibility that [one individual] could obtain relief for himself does not preclude the Attorney General from seeking 'complete relief' for all current and future [individuals]...." *New York v. Mid Hudson Med. Grp., P.C.,* 877 F.Supp. 143, 149 (S.D.N.Y.1995).

Although Ohio Rev.Code § 1345.09 provides consumers with a private cause of action under the CSPA, Ohio Rev.Code § 1345.07 provides, in relevant part:

(H) The remedies available to the attorney general under this section are *cumulative and concurrent,* and the exercise of one remedy by the attorney general does not preclude or require the exercise of any other remedy. The attorney general is not required to use any procedure set forth in section 1345.06 of the Revised Code [setting forth the investigatory powers of the attorney general] prior to the exercise of any remedy set forth in this section.

Ohio Rev.Code § 1345.07(H) (emphasis added).[3] Ohio Rev.Code §§ 1345.07 and 1345.09 provide the attorney general and individual consumers, respectively, quite a bit of latitude in seeking relief under multiple theories. Neither provision contains language indicating that they are mutually exclusive. It does not seem to be the express intent of the legislature that Plaintiff should be precluded from prosecuting an alleged violator of the CSPA in the event that an individual could also seek legal enforcement of the act; the effect of the legislation is quite the opposite. It provides both attorneys general and private consumers with avenues for proceeding with a cause of action in a consumer fraud case. *See* Ohio Rev.Code §§ 1345.07 & 1345.09.

---

**3.** Further, Ohio Rev.Code § 1345.09 provides, in relevant part:

(H) Nothing in this section shall preclude a consumer from also proceeding with a cause of action.... 

Ohio Rev.Code § 1345.09(H).

In this case, the relief sought by Plaintiff is broader than that which would be sought by private litigants. Plaintiff seeks injunctive relief as well as damages for the Consumers. Private litigants, who were on the brink of foreclosure, may lack the resources to pursue relief for themselves. Private litigants are unlikely to undertake the costs of litigation despite their private right of action under the CSPA. The maximum amount of loss for each individual in this case was $2,500. That amount of money may have high stakes—it may mean the difference between keeping a home and losing it to foreclosure—but it may not constitute a reward high enough to offset the financial risk of litigation to a homeowner in great economic distress. Based on the foregoing, it is highly unlikely that private litigants would pursue the claims which Plaintiff raises.

The Court therefore concludes that the facts of this case satisfy the *Snapp* test. Plaintiff and the State of Ohio have a quasi-sovereign interest apart from the interests of particular private parties, as demonstrated by the enactment of the CSPA and the Consumers (a total of 92 of them) have alleged injuries, exceeding the numerosity requirements accepted by courts in other jurisdictions. For these reasons, the Court finds that Plaintiff has standing to pursue the instant adversary proceeding.

### B. Plaintiff Possesses a Claim or Right to Payment.

▮▮▮▮ Defendant has also asserted that Plaintiff has no "claim"[4] or "right to payment." The Supreme Court has held that the "right to payment" encompasses any enforceable obligation. *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) (citing *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 558, 563–564, 110 S.Ct. 2126, 2130–2131, 2133–2134, 109 L.Ed.2d 588 (1990) ("We have previously explained that Congress intended by this language to adopt the broadest available definition of 'claim.' ... '[R]ight to payment' [means] nothing more nor less than an enforceable obligation...."); *see also Ohio v. Kovacs,* 469 U.S. 274, 279, 105 S.Ct. 705, 707, 83 L.Ed.2d 649 (1985)). Absent an overriding federal interest, the existence of a claim in bankruptcy is generally determined by state law. *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979). A claim may be contingent or unmatured yet remain a claim for purposes of bankruptcy law, as long as at the time of the bankruptcy petition, it is a right at least potentially enforceable by the creditor. *Maple Forest Condo. Ass'n v. Spencer (In re Spencer),* 457 B.R. 601, 606 (E.D.Mich.2011). As evidenced by the plain language in 11 U.S.C. § 101(5), a judgment is not a prerequisite for a claim. This was further clarified by this district in *Huffy Corp.:*

> In enacting this broad definition of claim, Congress contemplated that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy" to permit the "broadest possible relief in bankruptcy court."

---

4. Section 101(5) states, in relevant part:

 The term "claim" means—
 (A) right to payment, *whether or not such right is reduced to judgment,* liquidated, unliquidated, fixed, *contingent,* matured, unmatured, *disputed, undisputed,* legal, *equitable,* secured, or unsecured; or

 (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, *whether or not such right to an equitable remedy is reduced to judgment,* fixed, *contingent,* matured, unmatured, *disputed, undisputed,* secured, or unsecured.
 11 U.S.C. § 101(5) (emphasis added).

. . .

This expansive term includes a right to payment that is "contingent" in nature. 11 U.S.C. § 101(5)(A). Although the term "contingent" is not itself defined in the Bankruptcy Code, courts have concluded that contingent claims are those in which a debtor will be required to pay only upon the occurrence of a future event triggering the debtor's liability. . . . The inclusion of a contingent right to payment in the definition of a bankruptcy claim clarifies that a right to payment that is not yet enforceable under non-bankruptcy law at the time of the bankruptcy filing may still constitute a claim that is dischargeable in the bankruptcy case. [*In re*] *Parks*, 281 B.R. [899] at 902 [ (Bankr.E.D.Mich. 2002) ]; *Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Products)*, 225 B.R. 862, 866 (Bankr.S.D.N.Y.1998), *aff'd*, 209 F.3d 125 (2nd Cir.2000). *See also In re Fretter*, 2000 WL 1780256, at *3 (Bankr.N.D.Ohio Sept. 20, 2000) (noting that a "claim does not arise post-petition simply because the time for payment is triggered by an event that happens after the filing of the petition"). . . .

. . .

[A] broad definition of claim allows a bankruptcy court to deal fairly and comprehensively with all creditors in the case and, without which, a debtor's ability to reorganize would be seriously threatened by the survival of lingering remote claims and potential litigation rooted in the debtor's prepetition conduct.

*In re Huffy Corp.*, 424 B.R. 295, 300–01 (Bankr.S.D.Ohio 2010) (citations omitted) (some internal quotation marks omitted).

██ The fact that Plaintiff does not have a final judgment from the state court has no bearing on whether Plaintiff can now pursue a nondischargeability claim against Defendant. Plaintiff's right to seek damages on behalf of the Consumers and pursue restraining orders or injunctions are enforceable obligations and fall within the broad definition of the term "claim". Therefore, this Court finds that Plaintiff has a claim or right to payment in this case.

## VI. CONCLUSION

For all of the foregoing reasons, this Court concludes that Plaintiff has a claim and right to payment against Debtor's bankruptcy estate. Further, the Court concludes Plaintiff has standing to pursue a nondischargeability claim in this Court. Because this Court finds that Plaintiff has standing to pursue a nondischargeability claim pursuant to the doctrine of *parens patriae*, the remaining arguments regarding Plaintiff's standing are moot. Defendant's Motion to Dismiss (Doc. 22) is **DENIED**.

**IT IS SO ORDERED.**